IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| LARRY P. RAYFIELD, | ) Civil Action No. 4:09-00061-DCN-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This is an action brought pursuant to Section 205(g) and 1631(c)(3) of the Social Security Act (Act), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

The plaintiff, Larry P. Rayfield, filed applications for DIB and SSI on July 20, 2004, alleging a disability onset date of March 1, 2004. (Tr. 55-63). Plaintiff requested a hearing (Tr. 37) before an administrative law judge (ALJ) after his claim was denied initially and on reconsideration. (Tr. 44-47, 39-43). A hearing was held on March 10, 2008, before Karen H. Baker, ALJ, at which plaintiff appeared with his counsel and testified. A vocational expert, Benson Hecker, Ph.D., also testified at

the hearing. (Tr. 559-595). The ALJ issued a decision on September 2, 2008, finding that plaintiff was not disabled because he has the residual functional capacity (RFC) to perform a limited range of medium, unskilled work, which allows him to perform his past relevant work as a rest area cleaner. (Tr. 14-26). The Appeals Council denied plaintiff's request for review of the ALJ's decision on November 28, 2008 (Tr. 6-9), thus making the ALJ's decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. §§ 404.981 and 416.1481. The plaintiff filed this action on January 9, 2009.

## II. FACTUAL BACKGROUND

Plaintiff was born July 21, 1952. He was 51 years old on the alleged disability onset date (Tr. 55) and 56 years old at the time of the ALJ's decision. His past relevant work experience is as a rest area cleaner, weaver, insulation installer, and pallet builder. (Tr. 26). Plaintiff testified that he finished the 7th grade, but cannot read or write and can only spell and sign his name. (Tr. 24). Plaintiff alleged disability due to leg problems, heart problems, high blood pressure, diabetes, chronic obstructive pulmonary disease (COPD), bad nerves, double vision, headaches, depression and anxiety. (Tr. 41, 47, 102).

## III. DISABILITY ANALYSIS

Plaintiff's arguments consist of the following, quoted verbatim:

1.  The Administrative Law Judge committed reversible error by failing to accord "great weight" to the opinions of Mr. Rayfield's treating physicians, Doctors Klosterman and Browning, that Mr. Rayfield was totally disabled.

2.  The Administrative Law Judge committed reversible error because a critical finding by the Administrative Law Judge is not supported by substantial evidence.

In her decision of August 24, 2006, the ALJ made the following findings of fact and

2

conclusions of law:

1.  The claimant met the insured status requirements of the Social Security Act through December 31, 2007.

2.  The claimant has not engaged in substantial gainful activity since March 1, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: mild axonal neuropathy, diabetes mellitus, and possible anxiety (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). He is able to lift/carry up to 50 pounds occasionally and 25 pounds frequently. He is able to stand/walk for at least a total of 6 hours per workday. He is unable to climb ladders, ropes or scaffolds. He is able to occasionally climb ramps and stairs. He should avoid concentrated exposure to hazards. He is able to perform simple tasks that do not require ongoing interaction with the general public. He is able to understand and remember short and simple instructions. He is able to attend to and perform simple tasks without special supervision for at least two-hour periods. He is able to respond appropriately to changes in a routine setting. He is able to avoid work hazards.

6.  The claimant is capable of performing past relevant work as a rest area cleaner (unskilled; medium exertion). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "supported by substantial evidence" means "evidence which a reasoning

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance," Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). Under the Act (42 U.S.C. § 405 (g)), this Court's scope of review of the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a and 416.920, 416.920a. An ALJ must consider: (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Part 404, Subpart P, Appendix 1), (4) whether the claimant has an impairment which prevents past relevant work, and (5) whether the claimant's impairments prevent her from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 1382c(a)(3)(A), pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. §§ 404.1505(a) and 416.905(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §§ 423 (d)(5) and 1382c(a)(3)(H)(i). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

# IV. PLAINTIFF'S SPECIFIC ARGUMENTS

**The Administrative Law Judge Gave Appropriate Weight to the Medical Opinions and Relied on Substantial Evidence in the Record to Support Her Conclusions.**

Plaintiff argues that the ALJ erred by failing to accord "great weight" to the opinion of his treating physician, Dr. Klosterman, and treating psychiatrist, Dr. Browning, that he is totally disabled. (Pl. Br. 15). Plaintiff asserts that the Fourth Circuit standard for more than 45 years has been that a treating physician's opinion of disability must be given great weight and that the opinion of a treating physician can be disregarded only if there is persuasive contradictory evidence. Plaintiff cites SSR 96-2p as authority that a treating physician's medical opinion is entitled to controlling weight when it is supported by objective medical evidence and uncontradicted in the record. (Pl. Br. 15).

Plaintiff argues that Dr. Klosterman and his partner have treated him since 2000 and that Dr.Klosterman is very familiar with his impairments. Plaintiff's brief quotes Dr. Klosterman's narrative report of January 28, 2008:

> ...with so many medical problems and difficulty with mental anxieties and stresses from a typical workday, I am recommending that the patient be considered strongly for disability, not only due to his pain but also his functional capacity being decreased by his COPD and claudication...I do feel that the patient does qualify. (Tr. 451).[1]

---

[1] Plaintiff's brief omits a substantial portion of Dr. Klosterman's report. A review of the entire report sheds useful light on the issues raised in plaintiff's and defendant's briefs. The report states:

> Larry has been a patient of mine since 2004 and a patient of my partner, Dr. Ruffing's, since 2000. Patient during that period of time has had significant medical problems to include hospitalization three or four different times, mostly revolving around his breathing with chest pain dealing with significant problems as well as COPD exacerbations and lastly questionable stroke-like symptoms or TIAs. During that period of time, the patient has had a catheterization which was not medically indicating the need for stent or surgery, however, does affect his daily life. The patient as well has a history of claudication which we have worked up for leg pain. He also has a history of diabetes type 2 with neuropathy to his lower extremities. Contributing to this is also some anxiety disorder and osteoarthritis of the shoulders, knees and hips. We have also done a rheumatologic workup

Plaintiff asserts that the ALJ rejected Dr. Klosterman's opinion based on the following

reasons:

> This physician [Dr. Klosterman], however, did not describe[]
> specific work-related limitations that would be severe enough to
> render the claimant unable to sustain simple medium, light, or
> sedentary work. Moreover, his own treatment notes do not
> indicate Mr. Rayfield is debilitated to the point of being unable
> to sustain substantial gainful activity. (Tr. 22) (Pl. Br. 16)[2].

Plaintiff argues that the ALJ's above statement is "patently inaccurate" because the

detailed summary of Dr. Klosterman's office records concerning numerous visits over a number

of years, as well as the lengthy narrative report, repeatedly state a number of impairments

causing significant restrictions which fully support that he is disabled. Plaintiff argues that the

ALJ's statement is "nothing more than an attempt to substitute the non-medical opinion of the

Administrative Law Judge, who is not a medical expert, for the expert opinion of Mr. Rayfield's

treating physician" and that "it is reversible error for the Administrative Law Judge to interject

her own opinion as medical evidence and then rely upon it to deny a meritorious claim." (Pl. Br.

which was negative for these types of pains as well. The patient also at times depended on oxygen at home for low oxygen. This was related to the COPD, emphysema and infection. He does not have to be on oxygen chronically. As such, with so many medical problems and difficulty with mental anxieties and stresses from a typical workday, I am recommending that the patient be considered strongly for disability not only due to his pain but also his functional capacity being decreased by his COPD and claudication. The patient has had very good compliance with diabetes, hypertension and COPD medicines. He has had difficult compliance, though, with pain medicines and with anxiety medicines that are controlled substances. We have addressed this at multiple times with the patient and I do feel there is some manipulation within the family situation for these medicines; however, I overall feel that the patient does qualify. As such, I do feel that the family situation with his wife is very important to assess as Larry's underlying anxiety disorder and history of strong psychotropic drugs does make him a number one codependent personality as well as someone that is potentially easily manipulated. As such, though, I do feel that he can handle his own finances, while I am not sure medicine-wise for controlled substances. As such, I would be willing to discuss any concerns or questions regarding Larry's overall health and functional capacity. (Tr. 451).

[2] Plaintiff's brief omits the ALJ's concluding sentence in this paragraph of her decision in which she states: "Again, it will be explained later in this decision that the claimant's reports concerning his physical and mental symptoms are not very credible." (Tr. 22).

16).

Plaintiff further argues that his treating psychiatrist, Dr. Janis Browning, completed a functional capacity evaluation listing severe functional restrictions resulting from Mr. Rayfield's psychiatric condition which preclude him from engaging in substantial gainful work. (Tr. 189-191). However, the Administrative Law Judge refused to assign "great weight" to these opinions of the treating psychiatrist, Dr. Browning, upon the following basis:

> This assessment is entitled to some, but not great, weight because the extent of the work-related mental limitations is simply not supported by this physician's treatment notes or the medical evidence considered in its entirety. (Tr. 21). (Pl. Br. 18).[3]

Plaintiff argues that "this statement by the Administrative Law Judge is patently incorrect." (Pl. Br. 18). Plaintiff argues that Dr. Browning's notes indicate that his thought processes were tangential and slowed, his thought content was hopelessness, ruminating, and delusional with ideas of paranoia and that he suffered from auditory and olfactory hallucinations. (Tr. 218). In Dr. Browning's initial interview of plaintiff, on May 26, 2004, she noted that plaintiff's concentration was impaired, his judgment poor, his insight poor, and his impulse control was only fair. (Tr. 218). She prescribed Xanax, Haldol, and Amitriptyline. (Tr. 218). On September 28, 2004, Dr. Browning made essentially the same findings. (Tr. 214). On January 27, 2005, Dr. Browning again reported that plaintiff continued to suffer from the same impairments and also observed that he appeared to be slow cognitively and that he suffered from post-traumatic stress disorder." (Tr. 209). Plaintiff argues that "Dr. Browning repeatedly stated

---

[3] Plaintiff's brief omits the ALJ's concluding sentences in this paragraph of her decision, which state: "Though the claimant has received some ongoing mental health treatment, his overall mental status has remained stable. He was hospitalized once upon reporting that he had been contemplating suicide. As explained further later in this decision, the claimant's overall credibility as to his physical and mental symptoms is dubious, at best." (Tr. 21-22).

8

that [his] GAF was 45, meaning he had severe restrictions in functioning. (Tr. 379, 380, 381, 383, 551, 552, 553, 556)." (Pl. Br. 18). Plaintiff argues that Dr. Browning's conclusions were not only supported by her treatment notes, but by his hospitalization in August 2006 due to suicide attempt (Tr. 358), and treatment notes of Dr. Klosterman, who repeatedly referred to his suffering from depression, anxiety, and panic attacks for which Dr. Klosterman prescribed psychotropic medications. (Pl. Br. 19). Plaintiff argues that "Dr. Browning's opinion is uncontradicted by the statements of any other treating physician or specialist of record and therefore must be accorded controlling weight." (Pl. Br. 19).

The Commissioner argues that the Administrative Law Judge gave appropriate weight to the medical opinions and pointed to record evidence to support her conclusions. The Commissioner asserts that, under 20 C.F.R. §§ 404.1527, 416.927, and Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996), a treating source's opinion will be given controlling weight only if it is well-supported by medical evidence and is not inconsistent with other substantial evidence. See Craig, 76 F.3d at 590 (a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner points out that, while plaintiff argues that the longstanding standard in the Fourth Circuit is to accord "great weight" to the opinions of treating physicians, Plaintiff's brief cites case law that predates the Social Security Administration (SSA) Regulations and Rulings which specifically address the appropriate weight to be given to treating physicians.[4]

---

[4] The SSA's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, more weight is given to the opinions of examining physicians than non-examining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R.

When not giving controlling weight to a treating source's opinion, the ALJ shall consider the factors in 20 C.F.R. §§ 404.1527(d)(1)-(d)(6) and 416.927(d)(1)-(6). However, as the Commissioner argues, the ultimate decision on whether a claimant meets the statutory definition for disability is an administrative decision that is always reserved to the Commissioner. See Morgan v. Barnhart, 142 Fed. Appx. 716, 721-722 (4th Cir. 2005) (distinguishing between medical opinions and legal conclusions by physicians that claimant is unable to work or disabled, finding the latter are matters reserved to the Commissioner and are not entitled to heightened evidentiary value); 20 C.F.R. §§ 404.1527(e) and 416.927(e).

The Commissioner asserts that the ALJ found the opinions of treating physicians Dr. Klosterman and Dr. Browning not supported by the evidence and thus accorded the opinions limited weight. (Tr. 21-22). Instead, the ALJ found the corroborating medical opinions of the state agency consulting physicians well supported by the objective medical evidence and

---

§§ 404.1508, 404.1527(d)(2), 416.908, 416.927(d)(2).

The medical opinion of a treating physician is entitled to controlling weight, i.e. it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), SSR 96-2p, and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2 31, 35 (4th Cir. 1992).

In determining what weight to give the opinions of medical sources, the ALJ must apply all of the factors in 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6) which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. See SSR 96-2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Furthermore, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) state: "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." SSR 96-2p requires that "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

adopted these findings. (Tr. 21). <u>See</u> 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2) (ALJ must

consider findings of state agency personnel as opinion evidence). The Commissioner argues that

the ALJ did not, as plaintiff asserts, rely upon her own opinion or "speculate" about the medical

evidence. (Pl. Br. 16-17).5 The Commissioner argues that the ALJ properly relied upon the well-

supported assessments of Drs. Crosby, Chandler, Harper, and Price, the state agency consulting

---

5 The ALJ's decision states:

> In reaching a residual physical functional capacity for medium work, I adopt the
> well-supported State agency reviewer findings contained in Exhibit 15f. On
> January 11, 2005 and September 21, 2005, State agency reviewers found the
> claimant capable of medium work. The postural and environmental limitations
> they described are likewise supported by the objective medical evidence. A
> residual functional capacity for medium work would accommodate fatigue and
> weakness caused by claimant's combined conditions and medication effects. It
> would permit him to avoid exacerbation of musculoskeletal pain and shortness
> of breath related to over-exertion....With respect to the residual mental
> functional capacity, I adopt the well-supported State agency reviewer findings
> that are contained in Exhibit 12f. No State agency reviewer has found "marked"
> limitations in any of the work-related mental abilities. (Tr. 21)

physicians.[6]

Specifically, with respect to the ALJ's assessment of Dr. Klosterman's opinion, the Commissioner argues that the ALJ properly discounted Dr. Klosterman's opinion because he opined on the ultimate issue of disability, a matter reserved to the ALJ, and otherwise did not indicate any functional limitations attributable to plaintiff's impairments. See Morgan, 142 Fed. Appx. at 721-22 (legal conclusions on ability to work are reserved to the Commissioner); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (requiring a showing of related functional loss to establish a disabling impairment). While Dr. Klosterman did treat plaintiff for a number of ailments, and listed all of these conditions in his 2008 letter, the Commissioner insists that he did not describe any work-related limitations resulting from the diagnosed ailments. (See Tr. 451). Dr. Klosterman asserted that plaintiff's heart condition "affect[ed] his daily life," but did not explain how or describe the limitations that flow from plaintiff's asserted heart problem. (Tr.

---

[6] On January 11, 2005, after reviewing the medical evidence, state agency psychologist Renuka Harper, Ph.D., opined that Plaintiff had moderate limitations in activities of daily living and in maintaining social functioning, concentration, persistence, and pace (Tr. 307). She found the credibility of Plaintiff's statements highly questionable and wrote that "MHC notes indicate clmt highly motiviated to try and get disability" (Tr. 309). In completing a mental residual functional capacity assessment, Dr. Harper stated her opinion that Plaintiff had moderate limitations in the ability to understand, remember, and carry out detailed instructions; interact appropriately with the general public; and set realistic goals or make plans independently of others. (Tr. 315-316).

On January 16, 2005, after reviewing the medical evidence, state agency physician George Chandler, M.D., completed a physical residual functional capacity evaluation (Tr. 350-57). He concluded that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; could sit, stand, or walk for six hours during an eight-hour work day (Tr. 351); and must avoid concentrated exposure to hazards. (Tr. 354).

On July 6, 2005, after reviewing the medical evidence, state agency psychologist D.C. Price, Ph.D., opined that Plaintiff had moderate limitations in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods of time; interact with the general public; and set realistic goals or make plans independently of others. (Tr. 311-312).

On November 21, 2005, after reviewing the medical evidence, state agency physician William Crosby, III, M.D., completed a physical residual functional capacity evaluation (Tr. 343-49). He concluded that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; could sit, stand, or walk for six hours during an eight-hour day (Tr. 343); must never climb ropes, ladders, or scaffolds; could occasionally climb ramps and stairs (Tr. 344); and must avoid concentrated exposure to hazards. (Tr. 346).

451). Dr. Klosterman also broadly stated that plaintiff's functional capacity was decreased by his COPD and claudication, but did not provide any specific functional limitation flowing from these impairments. (Tr. 451). Furthermore, according to the Commissioner, the medical evidence described on pages 4-7 of plaintiff's brief, as it relates to Dr. Klosterman, merely shows a series of visits where plaintiff complained of symptoms and Dr. Klosterman diagnosed the likely cause. Dr. Klosterman did not make in-depth medical findings or place any limitations on plaintiff's activities. In this regard, the Commissioner cites <u>Kisling v. Chater</u>, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding that a condition that, among other facts, did not prompt a physician to restrict a claimant's activities was not disabling).

The Commissioner argues that the only real "opinion" in Dr. Klosterman's opinion letter is the conclusion that plaintiff was disabled and such a conclusion is a matter reserved to the Commissioner and, therefore, not entitled to any deference. <u>See</u> <u>Morgan</u>, 142 Fed. Appx. at 721-22 (legal conclusions on ability to work are reserved to the Commissioner); 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2).

Specifically with respect to the ALJ's assessment of Dr. Browning's opinion, the Commissioner argues that the ALJ assigned some, but not great, weight to Dr. Browning's opinion because the extent of the work-related limitations opined by Dr. Browning were not supported by her treatment notes or by the evidence as a whole. (Tr. 21). <u>See</u> 20 C.F.R. §§ 404.1527 and 416.927 (to be given controlling weight, the treating source's opinion must be well-supported by medical and diagnostic techniques and not inconsistent with other substantial evidence). The Commissioner argues that the ALJ found that Dr. Browning's treatment notes indicated that plaintiff's mental health status was primarily stable throughout the relevant period,

and much of her assessment rested upon plaintiff's unreliable reports of his own symptoms. (Tr. 21). In this regard, the Commissioner cites Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (fact that treating physician's diagnosis was based largely upon claimant's self-reported symptoms allowed ALJ to assign that physician's opinion lesser weight).

The Commissioner argues that, while her medical notes show that plaintiff experienced mental limitations, they do not support the extent of limitation opined by Dr. Browning. Dr. Browning frequently noted that plaintiff denied suicidal or homicidal ideation (Tr. 218, 214, 383, 382, 381, 380, 379), was cooperative and open (Tr. 218, 214, 209, 382, 380), and that, although slow, his thought process was content relevant. (Tr. 382, 381, 380). In May 2004, she assigned him a global assessment of functioning (GAF) score of 55. Dr. Browning subsequently - and consistently - assigned plaintiff a GAF of 45 (see Tr. 383, 382, 381).[7] But, although Dr. Browning initially (in May 2004) diagnosed plaintiff with factitious disorder [8] and personality

---

[7] Global Assessment of Functioning (GAF) "is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" Boyd v. Apfel, 239 F.3d 698, 700 n. 2 (5th Cir. 2001) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994)(DSM-IV). The GAF Scale, ranging from zero to 100, is divided into ten ranges of functioning, e.g., 90 (absent or minimal symptoms) to 1 (persistent danger of severely hurting self or others, or unable to care for himself). The GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range. The lower the GAF score, the more serious the symptoms. A score of 45, such as that assigned to plaintiff by Dr. Browning, indicates that the individual has "serious symptoms OR any serious impairment in social, occupational or school functioning" DSM-IV, supra, at 32. But "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). Further, the GAF score, standing alone, is of little significance to the fact finder, as there is no indication of whether it applies to symptom severity or level of functioning or impairment in reality testing or communication or major impairment in several areas and, if in several areas, which areas, and if these areas impact basic work activities. See 20 C.F.R. §§ 404.1521 and 416.921; see also "Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 Fed. Reg. 50746-01, 50764-765 (Aug. 21, 2000) (explaining that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"). Thus, the undersigned considers that plaintiff's GAF was simply another observation of plaintiff's self-reported symptoms made by Dr. Browning.

[8] Factitious disorder is a psychiatric condition in which an individual presents with an illness that is deliberately produced or falsified for the sole purpose of assuming the sick role. http://emedicine.medscape.com/article/291304-overview.

disorder, in January 2005, she concluded that "these two diagnoses relate more to his wife who wants to present him as disabled so that he can get disability. A more appropriate diagnosis may be PTSD [post-traumatic stress disorder]." (Tr. 209). Thereafter, Dr. Browning continued to diagnose PTSD. (Tr. 383, 382). The Commissioner argues that, in April 2007, Dr. Browning assessed plaintiff as psychiatrically stable. (Tr. 381).

Because Dr. Browning's treatment notes and assessments rely primarily upon plaintiff's self-reported symptoms, rather than objective medical evidence, the ALJ properly limited the weight of Dr. Browning's opinion. See Mastro, 270 F.3d at 178. The undersigned finds that, because the ALJ properly found that the plaintiff's statements about his impairments and limitations were not entirely credible (Tr. 22), the ALJ properly discounted Dr. Browning's opinion based on those alleged symptoms. It is important to note here, with respect to the scope of the undersigned's substantial evidence review, that plaintiff's brief does not challenge the ALJ's credibility finding, nor has plaintiff assigned error to the ALJ's assessment that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below. The claimant is simply not a credible witness....All self-reported symptoms and limitations inconsistent with less than the full range of medium work are not well supported by the objective medical evidence; thus, all such symptoms and limitations are not credible." (Tr. 24-25).[9]

---

[9] In evaluating a claimant's symptoms, including pain, the ALJ must first consider whether there is an underlying medically determinable physical or mental impairment(s), i.e. an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the individual's pain or other symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. See 20 C.F.R. §§ 404.1529 and 416.929, and SSR 96-7p.

In addition, the Commissioner points out that Dr. Browning noted on many occasions that plaintiff's wife attended and dominated the counseling sessions (Tr. 219, 381, 380, 379) and tried to present plaintiff as disabled (Tr. 219, 209), thereby calling into question plaintiff's motives and reported symptoms. Finally, the Commissioner argues, Dr. Browning's opinion that plaintiff suffered significant limitations is contrary to the ALJ's observations of plaintiff during the hearing and the notes made by SSA personnel during a teleclaim. The ALJ found that plaintiff responded in a clear, logical and coherent manner during the hearing. (Tr. 25). During a teleclaim in August 2004, the SSA interviewer recorded that plaintiff did not have difficulty with understanding, coherency, concentrating, talking, or answering. (Tr. 60-63). Therefore, the

---

When a claimant's statements about the intensity, persistence, and limiting effects of her pain or other symptoms are not substantiated by objective medical evidence, the ALJ is required to make a finding on the credibility of the claimant's subjective statements, based on a consideration of the entire case record, under the two-part test articulated in 20 C.F.R. §§ 404.1529(b) and (c) and 416.929(b) and (c), SSR 96-7p, and a long line of Fourth Circuit cases including Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989), Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994), Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), and Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006).

In making a credibility determination, the ALJ must consider: the objective medical evidence (medical signs and laboratory findings): the individual's own statements about the symptoms: any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual: and any other relevant evidence in the case record. 20 CFR §§ 404.1529, 416.929 and SSR 96-7p also require the ALJ to review seven specific factors when making a credibility determination: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and, (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.

undersigned finds that the ALJ properly assigned some, but not great weight, to the opinions of Dr. Klosterman and Dr. Browning's opinions as to plaintiff's work-related limitations.

**Substantial Evidence Supports the Administrative Law Judge's Determination of Plaintiff's Residual Functional Capacity and Her Finding that Plaintiff Can Return to His Prior Relevant Work.**

Plaintiff argues that the Administrative Law Judge's conclusion that he could perform his past job as a rest area cleaner, which was unskilled, medium-exertion work, is not supported by substantial evidence of record. (Pl. Br. 20). Plaintiff asserts that "the record is fraught with evidence that [he] cannot perform the physical demands of medium-level work and therefore cannot return to his former job as a rest area cleaner." (Pl. Br. 20). Plaintiff asserts that Dr,. Kooistra, his treating neurologist, and the staff at Spartanburg Regional Medical Center evaluated him to determine if he needed to use a wheelchair and concluded that not only did he need to use a wheelchair, but he needed a powered wheelchair because his arms were too weak to use a regular wheelchair. (Tr. 399-400, 402-405). (Pl. Br. 20).

Plaintiff also argues that medical evidence included nerve conduction studies of his upper and lower extremities which showed that he suffered from left cubital tunnel in his upper extremities and non-specific changes in the bilateral sensory nerves in both legs. (Tr. 419-422, 387-397). Plaintiff argues that his treating neurologist, Dr. Blatt, concluded that he suffered from congenital disease with ataxia spasticity and possible neuropathy secondary to diabetes. Then, Dr. Kooistra, who took over the plaintiff's neurological care, concluded that he suffered from polyneuropathy and CNS degenerative process. (Tr. 408). Plaintiff contends that MRIs of the lumbar, thoracic, and cervical spine all show significant impairments to his back. (Tr. 431-434). Office records and treatment notes of Dr. Klosterman repeatedly note plaintiff's difficulty

ambulating and diagnosis of claudication in both legs impairing his ability to walk. Plaintiff asserts that this diagnosis was later confirmed by tests by a specialist, Dr. Bottsford, which showed claudication in both of his legs. (Tr. 319-333).[10]

Plaintiff argues that "[t]he vocational expert testified that if [he] suffered from the mental restrictions described by Dr. Browning in her report of February 14, 2005 (Tr. 189-191) that [he] could not perform his past work as a rest area cleaner. (Tr. 593)." (Pl. Br. 21).

The Commissioner in reply, reiterates that "[t]he ALJ, finding numerous contradictions in plaintiff's testimony and a frequent lack of support for his assertions regarding his medical conditions, properly concluded that plaintiff was not fully credible. (Tr. 22-24)." (Def. Br. 15). The Commissioner cites Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) for the proposition that the ALJ can reject a claimant's testimony because it is inconsistent with the objective medical evidence. The Commissioner also asserts that the Fourth Circuit has held that the ALJ's assessment of a claimant's demeanor and credibility shall be afforded great weight since the ALJ had the opportunity to observe the claimant during the hearing, citing Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Commissioner argues that the ALJ's opinion thoroughly detailed the incredible statements by plaintiff. (Tr. 22-25).

_____

[10] A bilateral extremity angiography and an abdominal aortagraphy were performed on 08/17/05, as ordered by Dr. Bottsford. The medical record states:

> Aorta peripheral angiogram demonstrates narrowing of the left common iliac artery and distal common iliac artery as well as ulcerated plaque in the origin of the right common iliac artery. No significant pressure gradients were identified across any of the lesions and thus no intervention was performed. These findings were discussed with Dr. Bottsford and the patient. In the future, the patient may develop further symptomology with progression of the stenosis and at that time the patient may be a candidate for percutaneous therapy. It was discussed with the patient to start aspirin and it was also recommended to start Plavix. It is also discussed to place the patient on an exercise program. (Tr. 321-323).

Plaintiff testified that he experienced breathing difficulties, rendering him unable to do things anymore, caused by chronic obstructive pulmonary disease (COPD) and multiple sclerosis (MS). But the ALJ found that the record does not sustain plaintiff's statements that he was diagnosed with MS, and objective testing showed that plaintiff did not have severe breathing deficits. (see Tr. 181-84). A chest x-ray in January 2008 showed that plaintiff had "mild" pulmonary vascular congestion. Plaintiff's COPD was assessed as stable. (Tr. 499). While Dr. Klosterman did confirm that plaintiff had used oxygen at night, he stated in January 2008 that plaintiff did not need to be on oxygen chronically. (Tr. 451).

The Commissioner also points out that the ALJ found that plaintiff offered contradictory testimony about his need for a wheelchair and who prescribed it for him. (Tr. 23, see Tr. 576-79, 591). Plaintiff alleged that he needed a wheelchair because of his lower and upper extremity weakness. (Tr. 576-77). He initially stated that Dr. Blatt had prescribed the wheelchair six months to one year prior to the hearing (Tr. 577), but later stated that he had been in a wheelchair for the past two years (Tr. 578) and that the wheelchairs were prescribed by Dr. Corsta. (Tr. 591). He testified that he needed his wheelchair or motorized scooter at all times (Tr. 578), but the ALJ found that medical records showed otherwise. In 2005, hospital records documented that plaintiff ambulated independently (Tr. 249) and that Drs. Harp, Bottsford, and Klosterman recommended an exercise program for plaintiff. (Tr. 323, 470). On hospital admission in August 2006, plaintiff requested a wheelchair. However, physical therapists provided him with a cane and encouraged him to walk as much as he could. (Tr. 361). The ALJ pointed out that, in December 2006, Dr. Klosterman's treatment notes requested that Plaintiff walk up to two miles every day. (Tr. 159). Such a request clearly indicates that Dr. Klosterman

believed plaintiff was able to walk.(Tr. 25). Notably, Dr. Klosterman's narrative report of January 28, 2008, makes no mention of plaintiff's need for, or use of, a wheelchair. The ALJs' decision noted that, in October 2007, plaintiff reported to Dr. Klosterman that he walked multiple miles per day taking his wife's dog for walks. (Tr. 453). In his testimony at the hearing, plaintiff contended that he did not tell Dr. Klosterman that he walked his wife's dog, and stated that he could not walk a mile. (Tr. 594). The ALJ found that "the claimant's testimony that he never told this to Dr. Klosterman did not ring true." (Tr. 25). The Commissioner cites English v. Shalala, 10 F.3d 1080, 1084 (4th Cir. 1993) (citing with approval the consideration of daily activities as a factor in discrediting claimant's testimony) as authority for the ALJ's proper consideration of this contradictory evidence. Plaintiff testified that he began having trouble with weakness in his legs in the 1990s. (Tr. 579). Contrary to plaintiff's assertions that his neuropathy worsened to the point of constantly needing a wheelchair, the Commissioner asserts that medical evidence shows that plaintiff's physicians assessed his neuropathy as no worse or possibly even better in 2007 than in previous years. (Tr. 398, 408, 411). In September 2004, after filing for disability benefits, plaintiff stated that he walked a little to help with his heart. (Tr. 75). In March 2006, Dr. Blatt stated that plaintiff was doing the best she had seen. (Tr. 411). In October 2007, while being evaluated for possible neuropathy, Dr. Kooistra reported that there had been no major changes in plaintiff's condition since he was seen nine years earlier. (Tr. 398). Dr. Kooistra's assessment conflicts with plaintiff's complaint that his neuropathy continued to worsen and rendered him unable to walk distances by 2004. (Tr. 567, 569, 578-79). The Commissioner contends that plaintiff's ability to work for many years with the condition (see Tr. 49, 570-76) also calls into question his assertions about the disabling nature of this impairment.

See <u>Dixon v. Sullivan</u>, 905 F.2d 237, 238 (8th Cir. 1990) (finding a condition that was not disabling during working years and had not worsened could not be used to prove present disability).

The ALJ found that plaintiff's reports of multiple heart attacks in 2004 are not sustained by the medical evidence. Plaintiff testified and told physicians that he experienced two heart attacks in 2004 (Tr. 565-69, 240). While plaintiff did report chest pain on multiple occasions in 2004, he was assessed with muscoloskeletal pain, not cardiac-related problems. (Tr. 167, 173, 263, 255). Further, objective tests showed no signs of a heart attack. Cardiac catheterization in December 2004 showed no significant coronary artery disease (Tr. 187), which was consistent with his prior catheterization in 1995. (<u>see</u> Tr. 185). Plaintiff also demonstrated normal results on chest x-ray (Tr. 171, 195, 278, 260), echocardiogram, stress test, EKG (Tr. 177-79, 239, 235), and echo doppler. (Tr. 200). The ALJ specifically found that "The claimant testified he has not worked since 2004, in part because he suffered two heart attacks. The medical evidence, however, does not indicate the claimant had been found to have heart attacks. To the contrary, studies performed in July 2004 failed to show any evidence of significant coronary artery disease." (Tr. 24).

Finally, the Commissioner argues, the record contains evidence of multiple occasions where plaintiff's motives and credibility are called into question. As the ALJ discussed, plaintiff's wife frequently spoke for him and tried to present him as disabled. (<u>see</u> Tr. 17-18). Dr. Browning noted that plaintiff's wife attended appointments and wanted to speak for plaintiff in an attempt to present him as disabled. (Tr. 219, 209, 380, 381, 379). Dr. Browning and Dr. Klosterman also noted plaintiff's dishonesty as it related to anxiety and pain medication, with

potential manipulation by his wife. (Tr. 383, 451). In reviewing the medical evidence, Dr. Harper reported that the credibility of plaintiff's statements was highly questionable. (Tr. 309). Dr. Klosterman likewise reported that plaintiff was not giving full effort on exam. (Tr. 467). And, although plaintiff alleged anxiety and depression that got worse every day (Tr. 583), and made him want to blow his brains out (Tr. 582), the record demonstrates that plaintiff frequently missed appointments for mental health counseling. (Tr. 216, 213, 211, 208, 207, 206). See Hays v. Sullivan, 907 F.2d 1453, 1457 (4th Cir. 1990) (court found it significant that claimant was not receiving significant and ongoing treatment for allegedly disabling impairments); Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) (finding a claimant's failure to follow prescribed medical treatment inconsistent with complaints of disability).

The Commissioner argues that the medical evidence supports the ALJ's finding that plaintiff could perform a limited range of medium work.[11] The Commissioner argues that, while plaintiff points to isolated evidence that he believes is counter to the ALJ's conclusions, the whole of the evidence supports the ALJ's finding that plaintiff could do medium exertional work, with the non-exertional limitations consistent with the objective findings of Drs. Klosterman, Browning, Chandler, Crosby, Harper and Dixon. The medical evidence shows that, while plaintiff experienced health problems during the relevant period, objective medical testing was generally normal and plaintiff's physicians did not place any restrictions on his activities. To the contrary, plaintiff's medical providers frequently prescribed exercise or walking.

Plaintiff underwent numerous objective tests that showed primarily normal results. Plaintiff reported chest pain frequently, but on each occasion was diagnosed with

---

[11] See 20 C.F.R. §§ 404.1567(c) and 416.967(c), defining medium work.

muscoloskeletal or noncardiac chest pain. (Tr. 167, 173, 263, 187). On these occasions, medical testing showed normal results. (Tr. 171, 187, 274, 278, 195, 173, 177-79, 235). Plaintiff also showed normal results on EEGs, CT scans, and MRIs, when reporting symptoms indicative of TIAs or syncope. (Tr. 176, 253, 251-52, 473). His physicians, therefore concluded that his syncope incidents were of unknown etiology. (Tr. 173).

Plaintiff also reported weakness and pain in his extremities, diagnosed as likely neuropathy or claudication. However, objective findings were limited (Tr. 436-37, 467, 478, 488, 499) and plaintiff was frequently directed to walk or exercise to address the issue. (Tr. 323, 470, 361, 159, 453). In fact, none of plaintiff's treating physicians ever placed limitations on plaintiff's physical activities. See Bishop v. Barnhart, 78 Fed. Appx. 265, 268 (4th Cir. 2003) (fact that no medical source placed any restrictions on the claimant supports the ALJ's decision that the claimant was not disabled); Mink v. Apfel, 215 F.3d 1320 *1 (Table) (4th Cir. 2000) (lack of medical restrictions support the decision that claimant was not disabled).

The medical evidence is replete with notes indicating plaintiff was doing well (Tr. 237, 233, 467, 411, 407), that his medication was effective (Tr. 193, 407), and that he was asymptomatic. (Tr. 233). Both of the state agency physicians, after reviewing the evidence, concluded that plaintiff was capable of lifting up to 50 pounds occasionally, 25 pounds frequently, and sitting, standing, or walking for six hours during an eight-hour day. (Tr. 351, 343). See DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983) (holding the disability determination of a state agency is entitled to consideration by the Commissioner) and 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2).

In summary, the ALJ properly found plaintiff capable of medium work because she

determined that the objective medical findings were limited, plaintiff's statements concerning his symptoms were not credible, plaintiff's physicians did not place limitations on his physical activities, but rather frequently prescribed exercise, and the state agency physicians' opinions supported plaintiff's capacity to perform a limited range of medium work. Specifically with respect to plaintiff's mental health, the ALJ's decision indicates that she took into consideration Dr. Browning's opinion and treatment notes, and properly limited plaintiff to the performance of simple tasks with limited interaction with the public. (Tr. 21-24).[12] Specifically, with respect to plaintiff's physical health, the ALJ's decision indicates that she took into consideration Dr. Klosterman's opinion and treatment notes, and properly limited plaintiff's medium exertional work.[13]

The Commissioner further argues that, substantial evidence, in the form of vocational expert testimony responding to the ALJ's hypothetical, which included all of the limitations sustained by the record, supported the ALJ's determination that jobs exist in significant numbers that plaintiff could perform. See Lee v. Sullivan, 945 F.2d 687, 693-94 (4th Cir. 1991) (ALJ may rely on vocational testimony in response to question that reasonably sets forth claimant's impairments). The ALJ was not required to include limitations or restrictions in her hypothetical questions that she found were not supported by the record. Lee 945 F.2d at 698 (a requirement introduced by claimant's counsel in a question to the vocational expert "was not sustained by

---

[12] The ALJ determined that plaintiff "is able to perform simple tasks that do not require ongoing interaction with the general public. He is able to understand and remember short and simple instructions. He is able to attend to and perform simple tasks without special supervision for at least two-hour periods. He is able to respond appropriately to changes in a routine setting. He is able to avoid work hazards." (Tr. 20-21).

[13] The ALJ determined that plaintiff "is unable to climb ladders, ropes or scaffolds. He is able to occasionally climb ramps and stairs. He should avoid concentrated exposure to hazards." (Tr. 20).

the evidence, and the vocational expert's testimony in response to the question was without support in the record"); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (vocational expert testimony must be based on a proper hypothetical containing limitations based on the evidence of record to be reliable). The Commissioner asserts that the ALJ's assessment of plaintiff's residual functional capacity finding was supported by substantial evidence and accurately reflected plaintiff's credible limitations of record. Furthermore, the ALJ's hypothetical question to the vocational expert mirrored the limitations found by the ALJ in her residual functional capacity finding. Therefore, the hypothetical question set forth all of the limitations supported by the record and the vocational expert's response constitutes substantial evidence. The ALJ properly concluded, based on the vocational expert testimony, that plaintiff could return to his past relevant work, at a medium exertional level, as a rest area cleaner. Johnson v. Barnhart, 329 F. Supp.2d 751, 755 (W.D. Va. 2004) (under the 2004 revisions to the regulations, a claimant who can perform past relevant work, either as claimant actually performed it or as the work is generally performed in the national economy, is not disabled); 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(2), 416.920(a)(4)(iv), 416.960(b)(2).

The plaintiff points to the vocational expert's testimony, in response to a hypothetical presented by plaintiff's counsel, that plaintiff could not return to his past relevant work if Dr. Browning's opinion on his mental restrictions were to be given great weight. (Pl. Br. at 21). However, as discussed above, the ALJ properly afforded "some weight" to Dr. Browning's opinion, but did not give it great weight because the extent of limitation opined was not supported by the record. As in Lee, the purported limitations in the hypothetical question from plaintiff's attorney were not sustained in the record, therefore the vocational expert's testimony

in response is without support. <u>Lee</u>, 945 F.2d at 698. Because the ALJ applied the correct legal principles, plaintiff has set forth no reason for remand or reversal on this ground.

Where reasonable minds may differ on conflicting evidence as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). "[I]t is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence," <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the record contains substantial evidence to support the ALJ's resolution of such evidentiary conflicts. Despite plaintiff's claims, he fails to show that the Commissioner's decision was not based on the substantial evidence of the entire record. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision were to be considered de novo, a different result might be reached. The ALJ's decision applies correct legal standards and her factual determinations contain reasons for her findings, which are sufficiently specific to make clear to the undersigned and to any subsequent reviewers the weight the ALJ gave to the evidence and the reasons for that weight.

## V. CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1383(c)(3), it is

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

s/Thomas E. Rogers, III

February 16, 2010                              Thomas E. Rogers, III
Florence, South Carolina                       United States Magistrate Judge